# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ANTHONY CASTELLANOS,<br>Appellant, | DOCKET NUMBER<br>NY-0752-09-0107-X-1 |
| v. | |
| DEPARTMENT OF JUSTICE,<br>Agency. | DATE: September 25, 2014 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Louis D. Stober, Jr., Esquire, Garden City, New York, for the appellant.

Tiffany O. Lee, Esquire, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

### ORDER

The administrative judge issued a recommended decision that the Board find, under the Board's regulations in effect at that time, the agency in noncompliance with the initial decision, and the matter was referred to the Board

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

for consideration.[2]   *See* 5 C.F.R. § 1201.183 (Jan. 1, 2012).   For the reasons discussed below, we find the agency in partial compliance and order appropriate relief.

### DISCUSSION OF ARGUMENTS AND EVIDENCE OF COMPLIANCE

¶2        On August 13, 2009, the administrative judge issued an initial decision finding that the agency had constructively removed the appellant.  MSPB Docket No. NY-0752-09-0107-I-1, Initial Appeal File (IAF), Tab 30, Initial Decision (ID) at 2.  The administrative judge found that the agency coerced the appellant's resignation when it threatened to remove him from his position due to absence without leave (AWOL), although the agency knew or should have known that any AWOL charge could not have been sustained.  ID at 14.  The administrative judge rejected the appellant's claim of discrimination, finding that the agency's actions leading to his resignation resulted from incompetence, not discrimination.   ID at 15.   The administrative judge ordered the agency to cancel the appellant's resignation and retroactively reinstate him as of August 15, 2006, and pay him back pay, with interest, and benefits.  ID at 16.  Neither party petitioned for review.

¶3        On September 15, 2010, the appellant filed a petition for enforcement.  On May 26, 2011, the administrative judge issued a recommendation finding that the agency failed to pay the appellant the appropriate amount of back pay, restore his annual and sick leave balances, or restore his health insurance.  *See* MSPB Docket No. NY-0752-09-0107-X-1, Compliance Referral File (CRF), Tab 1 at 8.  Specifically, the administrative judge ordered the agency to explain how it computed the back pay; explain the effect, if any, of the agency's change from the GS system to the GL system; and address the appellant's claim that he would

---

[2] Except as otherwise noted in this decision, we have applied the Board's regulations that became effective November 13, 2012.  We note, however, that the petition for enforcement in this case was filed before that date.  The revisions to 5 C.F.R. § 1201.183 do not affect our consideration of the merits of this compliance proceeding.

have been promoted to the GL-8 level but for the wrongful personnel action in 2006. *Id.* The administrative judge also ordered the agency to address the appellant's leave balances and health insurance. *Id.* at 8-9. Finally, the administrative judge found the agency in compliance regarding reinstating the appellant because she determined that he did not wish to return to work at the agency. *Id.* at 7.

¶4   The parties filed multiple submissions in response to the recommendation. The appellant disputed the administrative judge's finding that he did not wish to return to work at the agency and noted that he in fact returned on July 18, 2011. *See* CRF, Tab 7 at 7. He also contended that the agency had not explained its back pay calculations, including how it determined his regular salary for each year, nor how it determined the appropriate holiday pay, night differential, Sunday hours, or overtime pay. *Id.* at 4-6. He sought a hearing on his placement in AWOL status between the effective date the agency first offered him reinstatement and his actual date of return. *Id.* at 8. He asserted that the agency did not show that he would not have been promoted to the GS-8 level. *Id.* at 9. Finally, he stated that the agency had not explained how it restored his sick and annual leave balances. *Id.*; *see also* CRF, Tab 12. In reply, the agency contended that it had fully complied with the administrative judge's recommendation. *See, e.g.*, CRF, Tab 9 at 4; CRF, Tabs 14, 15.

¶5   When the Board finds a personnel action unwarranted or not sustainable, it orders that the appellant be placed, as nearly as possible, in the situation he would have been in had the wrongful personnel action not occurred. *House v. Department of the Army*, 98 M.S.P.R. 530, ¶ 9 (2005). The agency bears the burden to prove its compliance with a Board order. An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011). The appellant may rebut the agency's evidence of compliance by making "specific, nonconclusory, and supported assertions of continued

noncompliance." *Brown v. Office of Personnel Management*, [113 M.S.P.R. 325](#), ¶ 5 (2010).

Reinstatement, Return to Work, and Absence Without Leave

¶6      The initial decision reversing the appellant's constructive removal ordered the agency to restore the appellant effective August 15, 2006. *See* ID at 2. He had previously held a position as Correctional Officer, GS-5, step 2. IAF, Tab 1 at 13; ID at 1. Following the initial decision, the agency offered the appellant a November 9, 2009 start date as a Correctional Officer, GL-5, step 2, contingent on his attending the next available Introduction to Correctional Techniques training. MSPB Docket No. NY-0752-09-0107-C-1, Compliance File (CF), Tab 3 at Attachment 1. The agency also required him to undergo a background investigation before returning to work. *Id.* The appellant did not return to work on November 9, 2009.

¶7      The agency then offered him a May 24, 2010 start date, contingent on his attending Refresher Training. CF, Tab 3 at Attachment 2. The appellant did not return to work on that date. *See* CF, Tab 3 at Attachment 3. The appellant's attorney informed the agency that the appellant did not want to return, fearing that he would be harassed, retaliated against, and wrongfully discharged, and inquired if the agency would accept his resignation in exchange for a lump sum payment. *See, e.g.*, CF, Tab 5 at Exhibits D, E, G, M, O. The attorney also objected to the requirements that the appellant attend an orientation and be treated as a new employee, which he asserted were at odds with the reinstatement order. CF, Tab 5 at Exhibit O. Finally, the appellant asserted, through his attorney, that he could not return to work "until and unless we work out all of the monies issues."[3] CF, Tab 5 at Exhibit G.

---

[3] It is unclear whether this statement refers to the entire back pay amount, to his salary upon his return, or both.

¶8         The agency calculated the appellant's back pay from August 15, 2006, to November 7, 2009, the last work day before the first return date offered by the agency.  CF, Tab 8 at 9; CRF, Tab 14 at 13-97.  The appellant challenged this calculation, asserting that the back pay period extended until his actual return on July 18, 2011, and that the agency had failed to reinstate him as ordered.  CRF, Tab 7 at 7.

¶9         In her recommendation, the administrative judge rejected the appellant's contention that the agency had failed to reinstate him (and, by implication, his challenge to the agency's determination of the length of the back pay period).  The administrative judge found that the agency's admitted error in offering the appellant placement as a new employee, rather than as a reinstated employee, was "*not* the reason that the appellant has not returned to work at the agency . . . . the appellant preferred not to return to the agency and was seeking—in exchange for severing his ties with the agency—a payment in addition to the back pay and interest.  The appellant had obtained other employment and intended to retain that employment."  CF, Tab 19 at 7 (emphasis in original) (internal citations omitted).

¶10        The appellant challenges this finding, asserting that the administrative judge improperly considered his statements to the agency about obtaining money in exchange for resigning because the statements were made as part of settlement discussions or as a settlement offer.  CRF, Tab 7 at 2.  We agree.  The Board will not consider statements made during the course of settlement discussions.  *Frank v. Equal Employment Opportunity Commission*, 90 M.S.P.R. 458, ¶ 4 n.2 (2001).  The administrative judge therefore erred in considering these statements.  We find that this error was harmless, however, because we hold that the appellant should have returned to work on the first date offered (November 9, 2009).

¶11        Upon reversing an action, the Board requires the agency to restore the appellant as nearly as possible to the status quo ante.  *Tubesing v. Department of Health & Human Services*, 112 M.S.P.R. 393, ¶¶ 5-6 (2009).  If the agency refuses to do so, it must demonstrate that it has "a strong overriding interest or

compelling reasons for not doing so." *Id.*, ¶ 6. However, an appellant is not entitled to refuse to report for work in every instance in which he disagrees that he has been restored to the status quo ante.

¶12        In *Cooke v. U.S. Postal Service*, 67 M.S.P.R. 401, 408, *aff'd*, 73 F.3d 380 (Fed. Cir. 1995), the Board affirmed a removal for AWOL charges stemming from the appellant's refusal to report to a position to which he had been improperly reassigned. The Board held that unless the appellant's refusal to report is "protected by either privilege or a legitimate concern that it would cause him irreparable harm," his "only proper recourse . . . [is] to obey the order and . . . challenge its validity on appeal." *Id.* In *Williams v. Department of the Air Force*, 89 M.S.P.R. 484 (2001), the Board applied this reasoning to an appellant who refused to report to one of two positions offered as a result of a settlement agreement. Although the appellant argued that neither position complied with the settlement agreement, the Board held that he was required to report to one or the other, and could challenge the suitability of the positions on appeal. *Id.*, ¶ 19.

¶13        Applying this reasoning to the instant situation, it is plain that, under our case law, the appellant had no justifiable reason to refuse to report for duty on November 9, 2009, the first date offered by the agency. Although the appellant believed that the conditions imposed (appointment as a new employee, training, background check) and the salary offered did not satisfy the agency's obligation to restore him to the status quo ante, *see, e.g.*, CRF, Tab 7 at 6, he has not shown that his refusal was protected by privilege or that he had a "legitimate belief that reporting [to duty] would cause him irreparable harm," *see Williams*, 89 M.S.P.R. 484, ¶ 19. Any harm he might have suffered could have been "cured during the course of" an appeal of the agency's actions or conditions. *See Cooke*, 67 M.S.P.R. at 408. Accordingly, the appellant should have reported to work, performed his assigned duties, and litigated these issues in a petition for

enforcement.[4] *See id.* at 407; *see also Williams*, [89 M.S.P.R. 484](), ¶ 19. We therefore find that the agency reinstated the appellant as ordered; that the appellant should have reported to work on November 9, 2009; that the agency reasonably carried him as AWOL from that date until when he actually reported to work in July 2011; and that the agency correctly determined that the back pay period ran from August 15, 2006, to November 7, 2009.[5]

Back Pay

¶14     Having determined that the back pay period ran from August 15, 2006, to November 7, 2009, we must examine the agency's back pay calculations. In her compliance recommendation, the administrative judge found the agency noncompliant because it failed to explain its back pay calculations. CF, Tab 19 at 8. After considerable back and forth with the appellant, the agency finally submitted its calculations and narrative statement to the Board on July 7 and 11, 2014.[6] CRF, Tabs 14 and 15. The appellant did not respond to these submissions.

¶15     As stated above, at the time of his constructive removal, the appellant occupied a position as a Correctional Officer, GS-5, step 2. IAF, Tab 1 at 13; ID at 1. According to the agency's back pay filings, it restored the appellant

---

[4] Because the appellant returned to work in July 2011, and has not raised any issues concerning his placement or payment from that date forward, we find that his challenge to the agency's technical errors is moot, except as discussed above concerning whether the agency reinstated him as ordered.

[5] We deny the appellant's request for a hearing regarding these issues, *see* CRF, Tab 12 at 9. Because we have not considered the appellant's statements made during settlement discussions, there are no contested issues of fact that require a hearing.

[6] The agency claims that it provided this information to the appellant in September 2010. CRF, Tab 14 at 5. Even assuming this to be true, the appellant's repeated complaints to the contrary notwithstanding, the agency did not provide this information in comprehensible fashion to the Board until July 2014.

effective August 15, 2006, at GL-6, step 2 ($19.86 per hour).[7] CRF, Tab 15 at 7; *see* Salaries & Wages, 2006-NY (LEO), U.S. Office of Personnel Management, http://archive.opm.gov/oca/06tables/html/NY_leo_h.asp. In the first pay period of 2007, the appellant received a 3.02% adjustment to $20.46 per hour (still GL-6, step 2). CRF, Tab 15 at 8; *see* Salaries & Wages, Salary Table 2007-NY (LEO), U.S. Office of Personnel Management, http://archive.opm.gov/oca/07 tables/html/NY_leo_h.asp. In pay period 8 of 2007, the appellant was promoted to GL-7, step 3 ($22.73). CRF, Tab 15 at 8. In the first pay period of 2008, the appellant received a 3.97% adjustment to $23.64 per hour (still GL-7, step 3). CRF, Tab 15 at 9; *see* Salaries & Wages, Salary Table 2008-NY (LEO), U.S. Office of Personnel Management, http://archive.opm.gov/oca/08tables/ html/NY_leo_h.asp. In pay period 8 of 2008, the appellant was promoted to GL-7, step 4 ($24.29 per hour). CRF, Tab 15 at 9. In the first pay period of 2009, the appellant received a 4.20% adjustment to $25.32 per hour (still GL-7, step 4), where he remained until November 7, 2009, the end of the back pay period.[8] *See* CRF, Tab 15 at 10; *see* Salaries & Wages, Salary Table 2009-NY (LEO), U.S. Office of Personnel Management, http://archive.opm.gov/oca/ 09tables/html/NY_leo_h.asp. The agency thus paid the appellant a total of $162,842.40 (which included regular, night differential, holiday, and Sunday pay), less his outside earnings and various deductions. CRF, Tab 3 at Attachment 2-1; *see also* CRF, Tab 6 at 12. Despite the appellant's charges of error, these calculations appear correct. Therefore, except for the overtime issue,

---

[7] The record does not explain why the agency restored the appellant to the GL-6 rather than the GL-5 level, given that he was a GS-5, step 2 before he resigned (and assuming some equivalency between grades on the GL and GS pay scales). However, because the GL-6 level pays more than the appellant earned at the time he resigned, the appellant benefitted from this decision, and the lack of explanation does not bar a finding of compliance.

[8] The agency apparently returned the appellant to work on November 9, 2009, at GL-7, step 4. CRF, Tab 6 at 23.

which we address below, we find that the agency properly computed and paid the back pay owed the appellant.[9]

Overtime Pay

¶16     The appellant asserts that he is entitled to the overtime pay he would have earned but for his constructive removal.  CRF, Tab 7 at 5.  The agency contends that he was not entitled to overtime pay because he did not work any overtime shifts during 2006 and thus "there is no historical basis to determine what, if any, overtime shifts the appellant would have worked during this time period."  CRF, Tab 10 at 5.  The agency further contends that the appellant could not have performed certain overtime shifts because they required specialized training, which he lacked.  *Id.*; *see also* CRF, Tab 14 at 7.

¶17     The Board's case law provides that overtime pay may be computed based on the employee's prior overtime assignment or upon the overtime assignments of similarly situated employees.  *Brady v. Department of the Navy*, 55 M.S.P.R. 693, 696 (1992).  The method selected in a particular case must be the one most likely to restore the employee to the status quo ante.  The Board has approved the use of averaging the hours worked by similarly situated employees in cases where using the appellant's pre-removal work history may not have reflected the period during the wrongful separation.  *Id.*

¶18     Here, we find that the agency should have computed the appellant's entitlement to overtime pay by averaging the hours worked by similarly situated employees during the back pay period.  For two reasons, his 2006 work history, upon which the agency relied, does not accurately reflect the hours he likely would have worked had he not been constructively removed:  first, the appellant

[9] We also find that the agency satisfied the administrative judge's order to explain the $144.37 discrepancy between the amount the agency originally informed the appellant it owed him, and the amount it actually paid; according to the agency, this difference resulted from its correction of the OASDI tax withholding.  CRF, Tab 3 at 4.  The appellant has not specifically contested this explanation, and we find no reason to do so.

apparently was injured and unable to work between January 1, and April 24, 2006; and second, beginning in January 2006, and extending until his resignation in August 2006, the agency barred him from its facility and improperly placed him on AWOL, thus preventing him from working once he was physically able to do so. *See* ID at 5-7, 10-12. It is disingenuous for the agency to claim that the appellant should be penalized for failing to work overtime in 2006 when it was the agency that prevented him from coming to work in the first place. Accordingly, we find the agency noncompliant on this issue and order it to compute and pay the appellant overtime pay during the back pay period by averaging the overtime hours worked by similarly situated employees.

¶19      If the agency determines that the employees similarly situated to the appellant underwent specialized training and worked particular assignments because of that training, the agency shall pay the appellant for the average of those hours, unless the agency determines that the training was competitive and would not have been granted the appellant if he had applied. The agency must provide the Board detailed calculations, as well as a narrative statement. The agency shall support its calculations, and any factual determinations as to the identity of the similarly situated employees and the availability and award of training opportunities, with sworn declarations. Finally, the agency must pay the appellant interest on the overtime amount and provide the Board its interest calculations and narrative explanation.

Promotion to GL-8

¶20      The appellant contends that he should have received a promotion to the GL-8 grade. CRF, Tab 7 at 8. The agency counters that the GL-8 position is not merely a promotion within the same job category of Correctional Officer but is the entirely separate position of Senior Officer Specialist, requiring competition. CRF, Tab 14 at 7; *see also* CRF, Tab 14 at 209-20 (job announcements for both positions). The appellant appears to accept the agency's contention that

promotion to the GL-8 level is not automatic but contends that promotion should be granted him because "he missed his opportunity to apply for a GL-8 position solely because of the Agency's improper act of terminating him." CRF, Tab 7 at 8.

¶21    We agree with the agency that the appellant was not entitled to promotion to GL-8. The appellant has not contradicted the agency's assertion that GL-8 positions are awarded only after open competition. Assuming that to be the case, he is not entitled to a promotion because in the absence of law requiring a promotion or facts establishing a clear entitlement to a retroactive promotion, an employee is not automatically entitled to a promotion upon reinstatement. *See Harris v. Department of Agriculture*, 50 M.S.P.R. 686, 697 (1991). The appellant has not identified any law or facts establishing a clear entitlement to retroactive promotion to the GL-8 level. Accordingly, we find the agency in compliance as to this issue.

Interest

¶22    The agency states that it paid the appellant $7,107.73 in interest on the back pay amount (which, as explained above, is correct but for overtime pay). CRF, Tab 3 at Attachment 2-1. The agency did not provide its calculations or any explanation of how it determined the interest amount. We therefore find it noncompliant on this issue and order it to submit its calculations and a narrative explanation of how it determined the interest.

Change from GS to GL System

¶23    The administrative judge ordered the agency to explain the effect, if any, of the agency's change from the GS to the GL system. CF, Tab 19 at 8. The agency explained that it converted various Bureau of Prisons staff members, including the appellant, to the GL system, and that this did not affect pay. CRF, Tab 3 at 5. Our review of the 2006 salary tables for the GS and GL pay scales reveals that the agency's assertion is incorrect for grades above 2 (which included the appellant).

For example, in 2006, GS-6, step 2 paid $17.10 per hour, while GL-6, step 2 (the appellant's grade and step) paid $19.86 per hour. *Compare* Salaries & Wages, 2006-NY, U.S. Office of Personnel Management, http://archive.opm.gov/oca/06tables/html/ny_h.asp, *with* Salaries & Wages, 2006-NY (LEO), U.S. Office of Personnel Management, http://archive.opm.gov/oca/06tables/html/NY_leo_h.asp. However, because the appellant was paid on the higher GL scale, the agency's erroneous assertion has not harmed him. In fact, he has benefitted from the change in pay scale. We therefore find the agency in compliance on this issue.

Leave Balances

¶24     The agency submitted charts explaining its leave calculations. *See* CRF, Tab 3 at 17-20. The calculations appear correct, and the appellant has not pointed to any specific flaw other than the agency's determination that leave should be paid only until the appellant failed to return to work on November 9, 2009. *See* CRF, Tab 12 at 10-11. As explained above, this time period is correct. Because the appellant has not specifically rebutted the agency's leave evidence, *see Brown*, 113 M.S.P.R. 325, ¶ 5, we find the agency in compliance as to restoring his sick and annual leave balances.

Health Insurance

¶25     The administrative judge ordered the agency to address whether it restored the appellant's health insurance. CF, Tab 19 at 8-9. The agency stated that the appellant is eligible for health insurance but has not paid the required premiums to bring his coverage up to date. CRF, Tab 3 at 5. The agency stated that it twice provided the appellant a health benefits election form but that he failed to return it to the agency and that his attorney indicated that the appellant did not wish to elect health insurance. *Id.* at 6. The appellant did not address this issue in his filings. *See, e.g.*, CRF, Tab 7 at 9 (addressing other all issues). Accordingly, we find the agency in compliance on this issue.

Attorney Fees

¶26     The appellant has filed a motion for attorney fees. CRF, Tab 4. Because the Board has not yet issued a final order in this compliance referral case, we deny the motion as premature. The appellant may file a motion for attorney fees with the appropriate regional office after this case concludes. *See* 5 C.F.R. § 1201.203.

Further Actions Needed for Compliance

¶27     Within **21 days** of the date of this Order, the agency shall submit its overtime and interest evidence, as explained above. If the agency fails to do so, the Board may issue an order to show cause why sanctions should not be imposed against the responsible agency official pursuant to 5 U.S.C. § 1204(e)(2)(A) and 5 C.F.R. § 1201.83(a)(2).

¶28     The appellant shall file a response within **14 days** of the agency's submission. Failure to submit a response within the required time period may cause the Board to assume the appellant is satisfied and dismiss the petition for enforcement.


FOR THE BOARD:                     _____
                                   William D. Spencer
                                   Clerk of the Board

Washington, D.C.